UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CHRISTOPHER ALAN GRAY, | ) | |
| | ) | CASE NO. 23-02762-RLM-13 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| DEBORAH J. LONG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary No. _____ |
| v. | ) | |
| | ) | |
| CHRISTOPHER ALAN GRAY, | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT
PURSUANT TO 11 U.S.C. §§ 523(a)(2) AND 523(a)(4)**

Deborah J. Long ("Long"), by counsel, objects to discharge of the debt owed to her by debtor Christopher Alan Gray ("Debtor"), and for her Complaint to Determine Dischargeability of Debt Pursuant to 11 U.S.C. §§ 523(a)(2) and 523(a)(4) ("Complaint") against Debtor states as follows:

### Jurisdiction and Parties

1.  This is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. § 157(b).

2.  Defendant is Debtor in a case under Chapter 13 of Title 11 of the United States Code, which is now pending in this Court as Case No. 23-02762-RLM-13.

3.  Long is a creditor of the Debtor.

4. This action is an adversary proceeding pursuant to 11 U.S.C. §§ 523(a)(2) and 523(a)(4) to object to and determine the dischargeability of certain indebtedness of the Debtor to Long.

5. This Complaint is timely, having been filed before October 10, 2023 deadline for objecting to discharge and filing a complaint to determine dischargeability of debt.

Factual Background

6. Starting before 2016 and at all times relevant to this Complaint, Debtor served as Long's fiduciary and financial advisor while working at Charles Schwab in Indianapolis. Debtor and Long communicated regularly about her accounts and financial status, and Long developed a deep sense of trust in Debtor. Debtor was aware of and encouraged Long's trust in him and gained sensitive information about Long's assets and finances.

7. Before and during 2016, Debtor's and Long's relationship progressed and became more personal as well as professional. During the course of their communications, Debtor wrote false statements to Long that misstated his financial condition while he gleaned accurate financial condition information from Long. Debtor and Long also communicated on casual, friendly terms, sharing information about their families, health, and lives in general.

8. By 2016, Debtor fully knew that Long was neither a sophisticated investor nor skilled with financial or commercial matters. Beyond this, Debtor learned Lyme disease had caused Long permanent injuries – including, among other things, impaired cognitive ability – and caused her to be fully disabled and unable to work by about February 2016.

9. Sometime in late 2016, Debtor started talking with Long about her providing financial support to a new business venture he had started, Physicians Wealth Management, LLC ("PWM"). Debtor told Long that through PWM – which was a single-member LLC that served

solely as an extension of Debtor – he would sell and provide wealth management services to physicians in central Indiana. Among other things, Debtor told Long he needed $100,000 of her money to get PVM off the ground.

10. In communications with Long during 2016, made false written and oral statements and implications that misstated and misled Long about his and PVM' financial condition. For example, Debtor stated or implied that he had physician clients lined up in November 2016 and had projected income amounts for PVM for 2016 and 2017. These statements and implications were false, made with intent to defraud, and intended to give Long false, misleading false impressions about Debtor and PVM.

11. In reliance on Debtor's many representations and implications, and because she trusted Debtor as her fiduciary, Long proceeded to withdraw funds – from an IRA that was her primary source for future retirement income – and loaned Debtor the requested $100,000 in November 2016.

12. Debtor's promissory note to Long was false, fraudulent, and odd in several respects and indicated that Debtor had neither an intent nor the ability to repay Long's money. For example:

- The note falsely said the funds came from "Mountain West IRA, Inc. FBO Investor Name IRA," later reidentified as "Mountain West IRA, Inc. FBO Deborah J. Long IRA," rather than coming from Long. Before seeing the note, Long had never heard of Mountain West, and she has ever had an IRA or any other account with the company.

- The note promised repayment to Mountain West instead of Long, and Debtor said that Mountain West would "hold the note" until it was paid. These statements falsely stated and/or implied that Mountain West – not Long – loaned Debtor the $100,000.

3

- The note promised an illusory 10-year repayment of at least $300,000 on Long's initial $100,000, an average annual growth rate of 11.6%. Debtor promised this return in a year (2016) when average returns were less than 1% for certificates of deposit and money market accounts and less than 3% for municipal bonds. Debtor, as a long-time financial professional, knew that the promised return was illusory and essentially impossible to achieve, especially over a 10-year period.

13. Long told Debtor she had concerns about and did not fully understand these statements and terms in the note. Debtor assured her, however, that the terms were standard and that Mountain West's role had no effect on the nature of the debt or Debtor's repayment obligation to Long. Long believed and relied on Debtor's statements and assurances and, because she trusted Debtor as her fiduciary, ultimately signed off on the note.

14. When Debtor took Long's money, he did <u>not</u> have clients lined up and had <u>not</u> projected positive income for PVM as he told Long. Debtor at the time knew that he lacked any legitimate ability to repay the loan and had no real intention of paying Long or otherwise making her whole. Debtor also exploited Long's lack of sophistication and investment savvy to extract the borrowed funds from her.

15. Despite taking Long's money, Debtor's PWM experiment ultimately failed and his financial situation deteriorated. Upon information and belief, Debtor never had <u>any</u> net income from PWM, which administratively dissolved (unknown to Long) in 2019. Debtor never made a single payment on the loan to Long, Mountain West, or any other person or entity. Furthermore, Debtor never gave Long the "reconciliation report[s] to confirm Physician Wealth Management's quarterly revenue" that were promised in the note.

16. Debtor defaulted on the note no later than January 2018, when he failed to make the first payment due. Long became concerned and contacted Debtor frequently to ask about the loan's

status and Debtor's plans for repayment. During this period, Debtor made a number of false and misleading statements to Long about his financial condition and PWM, the failure of which he hid from Long.

17. In 2020, in response to her continuing requests for information, Debtor sent Long a purported "Promissory Note Accrued Interest Payment Schedule" on PWM letterhead. The document purported to be "certified by the Financial Principal of Physicians Wealth Management," and alleged that $24,148 in interest had been paid on the loan as of Octoer 2020. The document was a fraud, however. The purported interest did not exist, had never "accrued" in any account, and was never paid to Long or anyone else.

18. After receiving the fraudulent "Payment Schedule" Long continued to seek information from Debtor on the loan and its repayment. From 2020 forward, however, Debtor cut off communications with Long.

19. By his fraud and other misconduct, Debtor knowingly and intentionally stole $100,000 from Long, and further defrauded her by never repaying the loan to anyone or satisfying the requirements of the note.

### Count I: Non-Dischargeability Under 11 U.S.C. § 523(a)(2)

20. Paragraphs 1-19 are incorporated as though fully restated herein.

21. Debtor used false pretenses, false representations, and fraud to obtain money, property, and services from Long.

22. Long reasonably and justifiably relied on Debtor's false representations and other misconduct in lending money to Debtor.

5

23. In the absence of Debtor's false representations and other misconduct, Long would not have loaned money to Debtor.

24. Debtor's conduct has rendered his debt to Long non-dischargeable pursuant to 11 U.S.C. § 523(a)(2).

### Count II: Non-Dischargeability Under Section 523(a)(4)

25. Paragraphs 1-24 are incorporated as though fully restated herein.

26. Debtor engaged in fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

27. In the absence of said fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny, Long would not have loaned money to Debtor.

28. Debtor's conduct has rendered his debt to Long non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).

### Prayer for Relief

Wherefore, Long respectfully prays for entry of an order and judgment determining that Debtor's debt to Long is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2) and/or 11 U.S.C. § 523(a)(4) and awarding Long all other just and appropriate relief.

Respectfully submitted,

_/s/ Matthew Foster_____
Matthew Foster (16400-49)
Foster Law LLC
9511 Angola Court, Suite 310
Indianapolis IN 46268
matt@fosterlaw.llc
317-399-4686

6

CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a true copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

U.S. Trustee
ustpregion10.in.ecf@usdoj.gov

Ann Delaney, Trustee
ECFdelaney@trustee13.com

J. Andrew Sawin, Counsel for Debtor
ecf@sawinlaw.com

_____
Matthew Foster
Attorney for Adversary Defendant

7